UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **GRAY INS. CO.** | **CIVIL ACTION NO. 07-1523** |
| | **JUDGE MELANÇON** |
| VS. | |
| | **MAGISTRATE JUDGE METHVIN** |
| **JOSEPH TERRY** | |
| **AARON D. TERRY** | |
| **TAMMIE M. TERRY** | |
| **GOVERNMENT TECHNICAL** | |
| **  SERVICES, LLC** | |

**RULING ON MOTION TO COMPEL**
*(Rec. Doc. 25)*

Before the court is a motion to compel and for attorneys fees filed by plaintiff Gray Insurance Co., seeking production of documents from defendants Aaron Terry and Government Technical Services (GTS) (Rec. Doc. 25). Respondents filed an opposition on June 13, 2008 (Rec. Doc. 28), and Gray filed a reply on June 26, 2008 (Rec. Doc. 33), and a supplemental reply on July 22, 2008 (Rec. Doc. 42). The motion was originally set for the undersigned's June, 2008 docket but was continued until the July docket pursuant to Gray's request, in an attempt to amicably resolve the issue. The parties, however, have failed to resolve their dispute. For the following reasons, the motion to compel and the motion for attorneys fees are **GRANTED**.

*Factual Background*

Gray alleges the following facts: It issues payment and performance bonds and stands as surety for selected contractors. GTS is a contractor which performs construction work. GTS required performance and surety bonds in order to submit bids and obtain certain Miller Act Projects.[1] Before Gray would issue any bonds to GTS, it required an indemnity agreement from

---

[1] The Miller Act is to protect those who furnish labor and material for public construction and to insure that they will be paid for the same. Graybar Elec. Co. v. John A. Volpe Const. Co.,

defendants. On January 6, 2005, the defendants executed a General Agreement of Indemnity ("GAI"), the terms of which required defendants to indemnify Gray for any liability, damages and expenses, including court costs, interests and attorney's fees, in the event that Gray paid any claims on GTS's behalf.

Pursuant to the GAI, Gray issued six performance and payment bonds on behalf of GTS in connection with construction projects with the U. S. Government.[2] The bonds secured the payment of any subcontractors hired by GTS, as required by the Miller Act. On all six projects, Gray was notified that GTS had failed to pay certain subcontractors. Several claims have resulted in litigation, and as a surety, Gray is entitled to assert the defenses of its principal, GTS. Gray contends that GTS has defaulted under the GAI, and seeks indemnification for all loss, liability, damages, and expenses (including but not limited to, court costs, interest and attorney's fees) which it may incur by reason of having executed the payment and performance bonds. In its Second Amended Complaint, Gray seeks a judgment requiring defendants to provide funds to Gray amounting to $351,502.91 "to protect Gray from loss or expense in connection with the bonded projects."[3]

---

387 F.2d 55, 58 (5th Cir. 1967).

[2] GTS contracted with the Army Corps of Engineers on various projects, including the construction of an Explosive Destruction System in Arkansas (the Pine Bluff Project); the installation of standing seam metal roofs at Fork Polk, Louisiana (the 1160 Roofing Project); the renovation of buildings 1352 and 1355 at Fort Polk; the expansion and rehabilitation of an emergency room at Fort Bliss, Texas; the installation of a fire alarm system at the Atlanta Campuses of the Center for Disease Control and Prevention (the Atlanta Project).

[3] Rec. Doc. 44, p. 10..

*Motion to Compel*

On February 29, 2008, Gray propounded a discovery request for all documents in defendants' possession for all six projects noted above. As noted above, Gray contends that responses have not been forthcoming, and the issues have been fully briefed.

*Issues Presented*

The parties raise the following issues in their memoranda: (1) whether the discovery requests are overly burdensome; (2) whether documents regarding the claim known as the "WFI" claim should be produced; and (3) whether attorneys fees should be granted.

*Background*

Aaron Terry was deposed on March 18, 2008. Respondents assert that all of the requested documents in their possession were produced at the deposition. Respondents argue that they believed that there was an agreement between the parties that they would search for and provide documents as to the claims of M&M Manufacturing Company, PBI Supply Inc., and Dunn Construction (Fort Polk Project); and Cannon (Pine Bluff Project) and these documents have now been produced.[4] In connection with the Atlanta project, a claim has been made by

---

[4] Respondents' argument is based on the following deposition testimony of Terry:

Q. (Ms. Coteau): . . . it looks like . . . there's probably some documentation out there in relation to the claim by Dunn or the work performed by Dunn, the work performed by Cannon, and then the work on WFI, Georgia. . . .
(Mr. Baudoin): It looks like it's – there's – this is not completely responsive to our request notice. Does GTS plan to supplement its response?
THE WITNESS:
Yes. Yes.

WFI, Georgia, Inc. for the work it performed at the Atlanta campuses of the Centers for Disease Control and Prevention. Terry stated at the deposition that he could not produce the requested "WFI documents," relating to the Georgia project, because Gray is already in possession of these documents as a result of ongoing litigation between "WFI" and GTS to which Gray is a party. GTS supplemented its production with four manila folders after Gray filed its motion to compel.

*Findings and Conclusions*

**Are Gray's requests overly burdensome?**

Respondents argue that Gray's request for *all* documents regarding the projects is overly burdensome. They assert that they have produced the documents according to the purported agreement.[5] Respondents assert that to require the entirety of all documents for all projects would create burden and expense associated not only with locating, copying and producing the documents, but also would also involve unnecessary attorney time and fees for reviewing the documents since Gray is seeking attorneys fees in its complaint.

---

[5] Rule 26(b)(2) provides in pertinent part:

(C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Since respondents filed their opposition, Gray has filed two supplemental pleadings. Gray does not respond to respondents' argument regarding its apprehension of an agreement to limit the discovery to the claims mentioned above, but continues to seek all documents. As to the latest production of 4 manila folders of documents, Gray argues they cannot possibly be the only documents that have been located that are related to the six government projects, amounting to revenues of millions of dollars. Gray argues that defendants have displayed dilatory tactics throughout this litigation, having become only slightly more cooperative under the scrutiny of the court.

Gray argues from a procedural standpoint that GTS should have raised its objection in its discovery responses instead of in its opposition.

Gray argues that its request is not overbroad because there has been a "constant influx" of claims and the current tally of claimants is over 20. Gray also argues that it has provided both payment and performance bonds on behalf of GTS and it has inferred from the wave of claims that claims related to GTS's performance could soon follow.[6] Thus, Gray argues that its requests for discovery are justifiably broad due since that is the extent of the liability to which it has been exposed by GTS. Moreover, Gray shows that it sent GTS's counsel a July 7, 2008 letter clarifying the documents it had requested but GTS has not responded.[7]

---

[6] Gray advises that: it has been notified by the United States Army Corps of Engineers that GTS's contract for the installation of standing seam metal roof systems on buildings 11160, 1270, 1272, 1056, 1164, and 1264 at Fort Polk have been terminated; and, from information received at Terry's deposition, it is faced with the possibility of two more performance defaults, the Explosive Destruction System at Pine Bluff Arsenal in Arkansas, and fire alarm system at the Centers for Disease Control and Prevention in Atlanta, Georgia.

[7] Rec. Doc. 42, Exhibit A.

Here, Gray has made requests for documents other than the claims it has alleged in its complaint. Judge Wilkinson in <u>BG Real Estate Services v. American Equity Insurance Company</u>, 2005 WL 1309048 at *1 (E.D. La. May 18, 2005) noted the following:

> The legal standard applicable to these motions as a threshold matter is the familiar dichotomy of Fed.R.Civ.P. 26(b)(1) and (2). After the substantial amendment to the discovery rules that became effective December 1, 2000, Fed.R.Civ.P. 26(b)(1) provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed.R.Civ.P. 26(b)(1). In addition, the court may order discovery of any matter relevant to the subject matter involved in the action only if the party seeking such discovery makes a showing of good cause. Id. The new standard concerning the scope of discovery is narrower than the old, pre-2000, broader standard. Seaga Mfg., Inc. v. Fortune Resources Enters., Inc., No. 99C50332, 2002 WL 31399408, at *3 (N.D.Ill. Oct. 24, 2002) (Mahoney, M.J.); Thompson v. Department of Housing & Urban Dev., 199 F.R.D. 168, 171 (D.Md.2001) (Grimm, M.J.).[8]

It is true that objections must be raised in a party's discovery responses or they will be waived. *See* <u>Essex Ins. Co. v. Neely</u>, 236 F.R.D. 287, 289 (N. D. W. Va. 2006) (While Rule 34 of the Federal Rules of Civil Procedure does not contain the same specificity and waiver provisions as Rule 33 of the Federal rules of Civil Procedure, the Advisory Committee notes to

---

[8] Rule 26(b)(1) provides:

(b) Discovery Scope and Limits.

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Rule 34 states that "the procedure provided for in Rule 34 is essentially the same as that in Rule 33." Pulsecard v. Discover Card Services, Inc., 168 F.R.D. 295, 303 (D. Kan.1996)).

Further, GTS has not come forward with any evidence to rebut Gray's arguments and submissions that it has not been forthcoming with discovery responses. It is clear that Gray requested <u>all</u> documents. Although GTS has produced some documents, the production clearly does not encompass all of the documents requested by Gray. Based on Gray's unrebutted showing that GTS had not been forthcoming with timely responses when Gray has attempted compromise solutions, even providing a list of specific materials, and in light of the numerous claims that have been filed, the undersigned finds that Gray has shown good cause for its requests for all documents related to the six projects, even those not specifically related to the claims that have been alleged in the complaints. My finding is further buttressed by GTS's agreement in the parties' GAI, which contemplates the requested disclosure, providing:

> (6) The Surety shall have access to all the books, and other documents of the Indemnitors during regular business hours or at any other reasonable time until the liability of the Surety under each Bond is terminated. Financial Institutions, materialmen, suppliers, bond obligees and all other persons and organizations, including suppliers of legal and accounting services, are authorized to furnish the Surety any information requested including the status and condition of work under any contracts being performed by any Indemnitor and finical[sic] status of such contracts.[9]

The undersigned further finds that GTS's argument that Gray is simply attempting to increase its liability for attorneys fees to be disingenuous in light of the unrebutted showing of the numerous claims being filed by subcontractors and the likelihood that claims by the government for GTS's failure to perform are imminent. The undersigned thus finds that the

---

[9] The Indemnity is attached to Gray's First Amended Complaint. Rec. Doc. 19.

information should be produced so that Gray can determine the scope of its liability as to the six bonded projects.

**The WFI Claim**

Gray submits evidence that all of the documents in GTS's possession have *not* been already submitted to Gray in connection with the WFI Georgia litigation. On July 17, 2008, R. Kyle Woods filed a motion to withdraw as attorney for GTS in a suit pending in the Northern District of Georgia, based in part due to GTS's failure to respond to numerous requests for documents and other information, making effective representation of GTS "difficult or impossible."[10] Gray notes that the "production consisted of only a small packet of information related to a single day of correspondence."[11] Again, GTS has not disputed Gray's allegations. Accordingly, the undersigned finds that GTS has not complied with its discovery obligation.

**Attorneys Fees**

GTS argues that following his deposition, Terry traveled to his Huntsville, Alabama storage facility where the documents were located to instruct an employee to obtain the information that he believed had been requested by Gray, but that the employee did not do what he was requested to do. Respondents again argue that they have now produced the requested documents, but again, respondents have not provided persuasive assertions that these documents, contained in four manila files, were all that it had in its possession. Respondents have not otherwise explained their failure to respond to Gray's repeated requests for documents. Because Respondents have not responded completely to Gray's request and have shown no acceptable

---

[10] Rec. Doc. 42-3.

[11] Rec. Doc. 33 at p. 2.

reason for their failure, the undersigned finds that attorneys fees are warranted in connection with the filing of this motion.

Considering the foregoing,

**IT IS HEREBY ORDERED** that the motion to compel is **GRANTED.**

**IT IS FURTHER ORDERED** that the discovery responses shall be provided to Gray *within 15 days of the date of this order.*

**IT IS FURTHER ORDERED** that, pursuant to F.R.Civ.P. 37(a)(4), respondents shall pay the attorney's fees and costs incurred in connection with the filing and prosecution of the extant motion to compel. Counsel for Gray shall file a motion to set attorney's fees and an affidavit of fees and costs into the record *on or before October 22 , 2008* in order to assist the court in the assessment of a reasonable fees and costs award. The affidavit(s) shall contain: (1) the customary hourly rate of each attorney and paralegal involved; (2) a detailed description of each task completed, and a statement of the amount of time expended upon each task; and (3) an itemized list of expenses incurred. *Failure to file the motion to set attorney's fees within the deadline or the affidavit in the form required and/or within the deadline imposed will render the award null and void.*

**IT IS FURTHER ORDERED** that objections to the affidavit shall be filed *on or before November 3, 2008*.

The Clerk of Court shall notice any motion and affidavit filed for consideration on the undersigned's November 19, 2008 motion calendar, without oral argument, as an "assessment of Rule 37(a)(4) fees and expenses."

10

Signed at Lafayette, Louisiana, on October 3, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)