RECEIVED
IN LAKE CHARLES, LA

MAR - 6 2014

TONY R. MOORE, CLERK
BY_____
　　　　　DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GRAY INSURANCE COMPANY** | * | **CIVIL ACTION NO. 2:07-CV-1523** |
| **Plaintiff** | * | |
| V. | * | |
| | * | **JUDGE MINALDI** |
| **JOSEPH TERRY, AARON D. TERRY, TAMMIE M. TERRY, & GOVERNMENT TECHNICAL SERVICES, L.L.C.** | * | |
| **Defendants** | * | **MAGISTRATE JUDGE HANNA** |

*************************************************************

## MEMORANDUM RULING

Before the court is the Motion for Summary Judgment [Doc. 86], filed by the Gray Insurance Company (Gray), to which Joseph Terry, Aaron Terry, and Tammie Terry (defendants) have filed an Opposition [Doc. 89], and Gray has filed a Reply [Doc. 92]. For the following reasons, Gray's Motion [Doc. 86] is hereby **GRANTED** as to the defendants, Joseph Terry, Aaron Terry, and Tammie Terry. As to Government Technical Services, L.L.C. (GTS), and pursuant to 11 U.S.C. § 362, all proceedings against GTS in the above captioned case, including consideration of this Motion, are hereby **STAYED**.

## FACTS & PROCEDURAL HISTORY

Gray is a surety company that issued a series of payment and performance bonds to the defendants and the defendants' business, GTS.[1] GTS is a general contractor that was in the business of providing construction services to governmental bodies. Joseph Terry served as the managing member of GTS, and Aaron Terry served as the Chief Operating Officer.[2]

---

[1] Memo. in Supp. [Doc. 86-1], at 2.
[2] *Id. See also* Opp. [Doc. 89], at 1.

1

This case stems from an Indemnity Agreement (Agreement), executed on January 6, 2005, between Gray and the defendants, in which Gray agreed to furnish bonds to the defendants on various projects in compliance with the Miller Act, 40 U.S.C. §§ 3131-3133.[3] The pertinent provisions of the Agreement are as follows:

> One or more of the undersigned, herein called Indemnitors, has requested or may request The Gray Insurance Company or The Gray Casualty & Surety Company or any of its insurance company affiliates, herein individually and collectively called Surety, to furnish, procure or continue contracts of suretyship, guaranty or indemnity, or other obligatory instruments, herein called Bonds, on behalf of any one or more of the Indemnitors.
>
> By the execution of this Agreement, the Indemnitors expressly warrant their material or beneficial interest in such Bonds, and in consideration of the furnishing, procuring or continuing of such Bonds, and other good and valuable consideration, the Indemnitors hereby jointly and severally agree to the following: . . .
>
> 3) The Indemnitors will indemnify and hold the Surety harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interests and attorney's fees, which the Surety incurs or sustains (1) because of having furnished any Bond, or (2) because of the failure of an Indemnitor to discharge any obligations under this Agreement, or (3) in enforcing any of the provisions of this agreement.
>
> 4) On demand by the Surety, the Indemnitors will pay the Surety the amount deemed necessary by the Surety to protect itself from all losses or expenses as soon as the Surety determines that liability exists, whether or not the Surety has made any payment or created any reserve.
>
> 5) The Indemnitors shall be liable to the Surety for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by the Surety in belief that either (1) the Surety was or might be liable therefore, or

---

[3] *See generally* General Indemnity Agreement [Doc. 86-6], at 1. Among other things, the Miller Act provides that
> Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded:
> (1) Performance bond. A performance bond with a surety satisfactory to the officer awarding the contract, and in an amount the officer considers adequate, for the protection of the Government.
> (2) Payment bond. A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. The amount of the payment bond shall equal the total amount payable by the terms of the contract unless the officer awarding the contract determines, in a writing supported by specific findings, that a payment bond in that amount is impractical, in which case the contracting officer shall set the amount of the payment bond. The amount of the payment bond shall not be less than the amount of the performance bond.

40 U.S.C. § 3131(b).

2

> that (2) they were necessary or advisable to protect the Surety's rights or to avoid or lessen the Surety's liability.
>
> Vouchers or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.[4]

The Agreement was signed, on behalf of GTS as an indemnitor, by Joseph Terry.[5] The agreement was also signed by Joseph Terry, Aaron Terry, and Tammie Terry as individual indemnitors.[6]

Gray alleges that, "[a]t the request of the [d]efendants, and pursuant to and in reliance on the terms of the Indemnity Agreement, Gray, as surety, issued payment and performance bonds on behalf of GTS in connection with several Miller Act construction projects for which GTS acted as the general contractor."[7] GTS alleges that some of the claims in question against GTS are still in litigation; further, GTS denies liability on a number of these claims, and, accordingly, asserts that it has defenses thereto.[8] GTS essentially argues that, rather than permitting GTS to resolve the claims against it, Gray has filed this suit, unilaterally made the decision to pay the claims asserted against GTS, and continued incurring attorneys' fees thereby driving the cost to GTS continually upward.[9]

Gray filed suit against GTS and the defendants on September 13, 2007, invoking diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[10] Gray sued seeking to recover payments made under the Agreement related to several Miller Act construction projects on which GTS acted as the principal and general contractor.[11] In its Complaint [Doc. 1], Gray

---

[4] General Indemnity Agreement [Doc. 86-6], at 1.
[5] *Id.* at 3.
[6] *Id.* at 4.
[7] Memo. in Supp. [Doc. 86-1], at 3.
[8] Opp. [Doc. 89], at 1-2.
[9] *Id.* at 2.
[10] Compl. [Doc. 1], at ¶ II.
[11] *Id.* at ¶ 10.

3

alleges that, on at least two occasions prior to filing suit, Gray sent demand letters to the defendants requesting security from GTS and the defendants pursuant to the Agreement.[12] These requests apparently went unanswered.

Count one of the Complaint [Doc. 1] requests specific performance pursuant to paragraph (4) of the Agreement, which, as noted above, gives Gray the right to demand from the defendants "the amount deemed necessary by [Gray] to protect itself from all losses . . . ."[13] Count two of Gray's Complaint [Doc. 1], similarly, seeks indemnification under the Agreement.[14]

Throughout 2007 and 2008, Gray filed a number of Amended Complaints, with the requested indemnification amount growing with each successive filing.[15] In September, 2008, Gray stated that it had, at that time,

> incurred $158,576.60 in attorneys' fees, costs and expenses by reason of having executed the payment and performance bonds and in enforcing the defendants' indemnity obligations under the [Agreement], for which the Indemnitors [defendants] are liable. Gray continues to incur losses, expenses and attorneys' fees in connection with the payment and performance bonds it issued on behalf of GTS and in enforcing the defendants' indemnity obligations under the Agreement.[16]

Gray filed a Motion for Summary Judgment [Doc. 45] in September, 2008. In February, 2009, Judge Melançon signed an Order [Doc. 63] denying Gray's Motion as premature, and staying the matter pending resolution of the underlying claims.[17] As the defendants at the time took the position that there was an unsettled issue in the case as to whether the claims paid by Gray had been *properly* paid, the court found that a final disposition on this matter was not appropriate at the time. The case was subsequently administratively terminated without

---

[12] *Id.* at ¶¶ XXXII, XXXIII.
[13] *Id.* at ¶ XXXVI.
[14] *Id.* at ¶¶ XLI – XLIII.
[15] *Id. See also* First Am. Compl. [Doc. 19]; Second Am. Compl. [Doc. 44].
[16] Second Am. Compl. [Doc. 44], at ¶¶ XLII – XLIII.
[17] Order [Doc. 63].

4

prejudice, permitting either party to reopen the case after rendition of a final judgment in the underlying actions.[18]

In February, 2013, Gray filed a Motion to Lift Stay and Reopen Litigation [Doc. 70], stating that "further proceedings are necessary and desirable at this time because the claims underlying Gray's indemnity action have now been resolved."[19] The Motion [Doc. 70] was granted in June, 2013, and the case was reopened.[20] Gray then filed its Third Amended Complaint [Doc. 82], which asserted that, as of September 24, 2013, Gray had paid out a total of $1,001,351.83 on the bonds issued on GTS's behalf.[21] This amount did not include Gray's attorneys' fees, costs, and expenses.[22]

Gray then filed the instant Motion for Summary Judgment [Doc. 86]. Shortly thereafter, GTS filed a Suggestion of Bankruptcy [Doc. 88] into the record, alerting the court to the fact that GTS had filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama, case no. 14-80203-JAC7.

## The Projects and Associated Claims

### 1. Pine Bluff Project

Gray's Motion details several separate projects on which Gray issued bonds to GTS and the defendants.[23] On the Pine Bluff Project, Gray paid a total of $55,616.02 in costs, attorneys' fees and expenses in connection with claims asserted against GTS, pursuant to a bond issued to GTS and the defendants, by subcontractors Coker Electric, L.L.C., Cannon Contracting, L.L.C., Matson Construction, and C.M.C. Construction Services.[24] The defendants argue that GTS did

---

[18] Order [Doc. 68].
[19] Memo. in Supp. [Doc. 70-1], at 3.
[20] *See* Order [Doc. 75].
[21] Third Am. Compl. [Doc. 82], at ¶ 51.
[22] *Id.* at ¶ 52.
[23] Memo. in Supp. [Doc. 86-1], at 3 – 11.
[24] *Id.* at 4. *See* Aff. of Christina Kocke [Doc. 86-5], at ¶ 16. *See also* Opp. [Doc. 89], at 2.

5

not owe Coker Electric, L.L.C., anything, because "the federal government declared Coker's pricing defective and reduced GTS' contract by the amount of Coker's claim."[25]

### 2. Fort Polk Project 1 – Buildings # 1160, 1270, & 1272

On the Fort Polk Project, in October, 2005, GTS again was contracted by the U.S. Army to install metal roofs on Buildings #1160, 1270, and 1272 at Fort Polk, in Vernon Parish, Louisiana.[26] Gray issued GTS and the defendants a bond in connection with this project, again naming GTS as the principal.[27] GTS subsequently had its contract terminated and was ordered to stop work on the Fort Polk Project "based upon [GTS's] failure to perform the contract within the time specified in the contract."[28] Gray alleges that it sustained losses "incurred in connection with nine separate payment bond claims."[29] Gray paid out $73,250.20 to A.S.C. Profiles, Inc., a subcontractor, in connection with the project. Further, Gray paid out $19,985.18 to M&M Manufacturing, $354.35 to Southern Pipe & Supply Company, Inc., and $3,472.08 to Heck Industries, Inc.[30] These amounts are undisputed by the defendants. Additional claims on the project for nonpayment were made by P.B.I. Supply, Inc., Dunn Construction, L.L.C., Southern Fastener & Tool, Tim Thomas, and H & E Equipment; however, no sums were paid by Gray on these claims.[31]

Gray took over the Fort Polk project on Building # 1160, hiring B.G.B. Construction, L.L.C., to complete the contract.[32] Gray paid B.G.B. Construction, L.L.C., $121,295.00 to complete the work on Building #1160.[33]

---

[25] Opp. [Doc. 89], at 2.
[26] Memo. in Supp. [Doc. 86-1], at 5.
[27] See Performance Bond, executed Oct. 17, 2005 [Doc. 86-6], at 65.
[28] Letter from Glenda S. Calcote, Contracting Officer, U.S. Army, to Joseph Terry, GTS, L.L.C., June 13, 2008 [Doc. 86-6], at 69.
[29] Memo. in Supp. [Doc. 86-1], at 5.
[30] See Memo. in Supp. [Doc. 86-1], at 6 (citations omitted); Opp. [Doc. 89], at 3.
[31] Memo. in Supp. [Doc. 86-1].
[32] Memo. in Supp. [Doc. 86-1], at 6.

The defendants deny that Southern Fastener & Tool was ever a vendor of GTS.[34] The defendants also state that they do not know why Heck Industries, Inc., or A.S.C. Profiles, Inc., were paid.[35] The defendants also contest the $121,295.00 paid to the firm hired by Gray to complete the Fort Polk Project, as the defendants argue that the final cost paid was unnecessarily high.[36] The defendants take particular issue with Gray's assessment generally of costs related to "claims, costs, expenses and attorneys' fees." As to the Fort Polk Project, these fees total to slightly more than $106,000.00.[37] It should be noted that, for each project in question, Gray has submitted an accounting of payments made, complete with payee information as well as the dates payments were made.[38] Thus, Gray alleges that it paid a total of $324,719.81 in connection with the bond issued on the first Fort Polk Project.

### 3. Fort Polk Project 2 – Building # 1355

GTS next contracted, again with the U.S. Army, to renovate Building #1355 at Fort Polk, and, again, Gray issued a payment and performance bond on said project.[39] Gray alleges that it incurred losses on this claim in the form of expenses and attorneys' fees in the amount of $1,420.63 for handling a claim asserted against Gray in the amount of $15,005.04 by Collins & Associates Land Surveyors, Inc. (Collins).[40] The defendants argue that, as the bond in question which covered the Building #1355 project at Fort Polk did not cover the surveying work done by Collins, and Gray's only function in this regard was to inform Collins that it was not covered and thus no payments would be forthcoming, they should not be held liable for indemnification as to

---

[33] *Id.* at 6-7.
[34] Opp. [Doc. 89], at 4.
[35] Opp. [Doc. 89], at 4.
[36] *Id.*
[37] *Id.*
[38] *See, e.g.*, Ex. 26 [Doc. 86-8], at 8.
[39] *See* Memo. in Supp. [Doc. 86-1], at 7.
[40] *Id.* at 7.

7

this claim under the Agreement.[41] Nevertheless, Collins did submit a claim against Gray, and sent a letter to Gray, dated September 20, 2006, requesting payment and explaining that if payment was not forthcoming that Gray would be added as a defendant in a then-pending lawsuit.[42]

### 4. Fort Bliss Project

In February, 2005, GTS contracted with the U.S. Army to do construction work on the emergency room at William Beaumont Army Medical Center at Fort Bliss, Texas.[43] Again, Gray issued a payment and performance bond on the project, listing GTS as the principal.[44] Jan-Car, Inc. (JC), thereafter submitted a claim, demanding payment of $71,270.84 from Gray.[45] Although no money was ever paid out to JC by Gray, Gray asserts that it is owed $3,115.94 in costs, expenses, and attorneys' fees in connection with investigating and resolving the claim.[46] The defendants argue that JC's claim was "based on change orders for additional work."[47] Essentially, the defendants argue that although JC filed a letter that set forth amounts owed, it never filed an actual claim. Thus, the defendants argue, no indemnification obligation exists as to Gray's fees incurred in handling the dispute with JC.[48]

### 5. Fort Polk Project 3 – Building # 1352

In July, 2005, GTS again contracted with the U.S. Army to renovate Building # 1352 at Fort Polk, Louisiana, and, again, Gray issued a payment and performance bond to GTS in connection with this work.[49] Central Electric of Alexandria, Inc. (Central Electric), demanded

---

[41] Opp. [Doc. 89], at 5.
[42] *See* Letter from Van C. Seneca to The Gray Surety, September 20, 2006 [Doc. 86-8], at 18.
[43] Memo. in Supp. [Doc. 86-1], at 8.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] Opp. [Doc. 89], at 5.
[48] *Id.*
[49] Memo. in Supp. [Doc. 86-1], at 8.

8

payment in the amount of $70,203.58 for material and labor furnished.[50] Central Electric filed suit against Gray in the Western District of Louisiana under theories of breach of contract, quantum meruit, unjust enrichment, and action on bond.[51] As a result, Gray alleges that it incurred costs, expenses, and attorneys' fees in the amount of $7,732.54.[52] As GTS, not Gray, ultimately paid the actual claim in question, the defendants dispute owing Gray costs associated with this claim under the Agreement.[53]

### 6. CDC Project

In July, 2005, GTS contracted with the Center for Disease Control and Prevention (CDC) to construct fire alarm systems within the CDC's Atlanta Campus.[54] Gray issued a payment and performance bond to GTS in connection with this project.[55]

Four separate payment bond claims were asserted against Gray in connection with this project. McKenney's, Inc., sued Gray and GTS for $66,950.00 in damages on monies owed for labor and materials already furnished.[56] Gray paid McKenney's, Inc., $75,000.00 in settlement of its claims.[57] Likewise, Gray paid $1,237.48 to G-S Company (G-S) for payment of materials and labor furnished on the CDC project.[58] Also, Capital Computer Group, L.L.C. (CCG), filed suit against Gray and GTS for payment of $239,004.14 owed to it in connection with the CDC Project.[59] Gray paid $365,999.69 to CCG pursuant to a judgment entered by the U.S. District

---

[50] Complaint, at ¶ 8, *Cent. Elec. Co. of Alexandria, Inc. v. Gov't Technical Servs, L.L.C. & The Gray Ins. Co.*, No. 1:06-cv-1449 (W.D. La. Aug. 24, 2006).
[51] *See generally id.*
[52] *See* Ex. 35 [Doc. 86-9], at 11.
[53] Opp. [Doc. 89], at 6.
[54] Memo. in Supp. [Doc. 86-1], at 9.
[55] Payment and Performance Bond, Contract no. 200-2005-14773, Ex. 36 [Doc. 86-9], at 12.
[56] *See* Complaint, at ¶ 11, *McKenney's, Inc. v. Gov't Technical Servs., L.L.C., et al.*, No. 1:07-cv-1722 (N.D. Ga. Jul. 24, 2007) [Doc. 86-9].
[57] Memo. in Supp. [Doc. 86-1], at 10.
[58] *See* Check from Gray Ins. Co. to G-S Comp., Feb. 20, 2008 [Doc. 86-9], at 27.
[59] Memo. in Supp. [Doc. 86-1], at 10.

9

Court for the Northern District of Georgia.[60] The CDC Project also resulted in a claim by W.F.I. Georgia, Inc., n/k/a Kratos Southeast, Inc. (Kratos), in the amount of $380,146.39 for materials and labor.[61] The Kratos litigation took several years to complete, resulted in multiple written opinions, as well as an appeal to the United States Court of Appeals for the Eleventh Circuit.[62] The end result was a full and final settlement whereby Gray paid Kratos $420,000.00 in connection with the CDC Project.[63]

In response to these claims, the defendants take issue with the fact that Gray is seeking over four hundred thousand dollars more than it paid out to the various claimants, due to Gray's attorneys' fees and expenses.[64] Christina Kocke, Surety Claims Manager for Gray, submits via affidavit that the total loss incurred by Gray in connection with the resolution of all of the foregoing claims presently stands at $1,683,509.82.[65]

## LAW & ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). The moving party bears the initial burden of showing that summary judgment is appropriate, and may meet that burden by pointing to those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, when the nonmovant shall bear the burden of proof at trial, "the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact

---

[60] See Proof of Payment from Gray Ins. Co. to Capital Computer Group, L.L.C., Jan. 20, 2012 [Doc. 86-10], at 1.
[61] See generally Complaint, *W.F.I. Georgia, Inc. v. Gov't Technical Servs., L.L.C. & The Gray Ins. Co.*, No. 1:07-cv-2445 (N.D. Ga. Oct. 3, 2007) [Doc. 86-10].
[62] See *United States v. Gray Ins. Co.*, 453 Fed. Appx. 905 (11th Cir. 2011).
[63] Memo. in Supp. [Doc. 86-1], at 11.
[64] Opp. [Doc. 89], at 6.
[65] Aff. of Christina Kocke [Doc. 86-5], at ¶ 84.

warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (*citing Celotex*, 477 U.S. at 322). A full trial on the merits is only warranted in instances where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted). However, the nonmovant may not survive a motion for summary judgment by raising "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

"Contracts have the effect of law for the parties." LA. CIV. CODE ANN. art. 1983 (1985). Courts have an obligation to enforce contracts as written. *Albert K. Newlin, Inc. v. Morris*, 758 So. 2d 222, 228 (La. Ct. App. 2000) (citation omitted). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046 (1985). The intent of the parties to a contract is generally to be determined from within the four corners of the instrument, and the general rule is that extrinsic evidence may not be considered in interpreting an unambiguous contract provision. *See Soileau v. Smith True Value & Rental*, No. 2012-c-1711, 2013 La. LEXIS 1536, at *23 (La. June 28, 2013). Whether a contract is clear or ambiguous is a question of law to be determined by the court. *Morris*, 758 So. 2d at 229 (citation omitted). The general rules of contractual interpretation apply to contracts of indemnity. *Boykin v. P.P.G. Indus., Inc.*, 987 So. 2d 838, 842 (La. Ct. App. 2008) (*citing Sovereign Ins. Co. v. Tex. Pipe Line Co.*, 488 So. 2d 982 (La. 1986)).

The court finds that the pertinent contractual provisions contained in the Agreement are clear and unambiguous. Paragraph three (3) of the Agreement clearly states that the defendants

11

> will indemnify and hold [Gray] harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interests and attorney's fees, which [Gray] incurs or sustains (1) because of having furnished any Bond, or (2) because of the failure of [a defendant] to discharge any obligations under this Agreement, or (3) in enforcing any of the provisions of this Agreement.[66]

This provision obligates the defendants to indemnify Gray for any expenses that Gray incurs "because of having furnished" the bonds in question to the defendants. Thus, the question under this provision is essentially one of causality. An indemnification obligation will exist if the expense incurred by Gray would not exist but for Gray's having issued payment and performance bonds to the defendants. The court finds that the expenses that Gray incurred on the aforementioned projects, articulated in Gray's Motion, were all incurred because of Gray's having furnished the subject bonds to the defendants.

This is true even in the case of, for instance, the JC claim, wherein Gray incurred $3,115.94 in costs and expenses defending JC's claim, even though no monies were ever paid out to JC. This finding is supported by the plain language of the contract, as well as by the simple reality that subcontractors who have not been properly compensated are going to look to their general contractor and their general contractor's surety for compensation. Gray, knowing this, has clearly tailored their bond contract language accordingly. The court finds no merit to the argument that Gray is not owed their expenses for defending a claim arising from the bonded project simply because Gray ultimately prevails in the dispute. Such disputes would not exist in the first place were it not for the bonding relationship between Gray and the defendants.

The defendants argue that Gray's incursion of attorneys' fees was not done in good faith. Louisiana law requires parties to a contract to perform contractual obligations in good faith. LA. CIV. CODE ANN. art. 1983 (1985); *see also* LA. CIV. CODE ANN. art. 1759 (1985). Although the defendants concede that "the language of the bond entitles Gray to be reimbursed funds that it

---

[66] General Indemnity Agreement [Doc. 86-6], at 1.

incurs as a result of issuing the bond," they argue that the Agreement "should not be construed as giving Gray a blank check to spend money as it pleases and then demand reimbursement from the [defendants]."[67] While the court agrees with the defendants in principle, their argument is ultimately misplaced.

> Paragraph (5) of the Agreement states that
>
> [t]he [defendants] shall be liable to [Gray] for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by [Gray] in belief that either (1) [Gray] was or might be liable therefore, or that (2) they were necessary or advisable to protect [Gray's] rights or to avoid or lessen [Gray's] liability.
>
> Vouchers or other evidence of such payments, including records of any nature maintained by [Gray] in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the [defendants] to [Gray].[68]

Pursuant to the agreement, Gray has submitted extensive records detailing legal fees, complete with precise dates and amounts, incurred by Gray in litigating the matters associated with the bonds in question that are sufficient to constitute prima facie evidence of the defendants' indebtedness to Gray. *See generally U.S. Fid. & Guar. Co. v. E.L. Habetz Builders, Inc.*, No. 06-895, 2008 U.S. Dist. LEXIS 29985, at *32-34 (W.D. La. Mar. 28, 2008). Furthermore, the terms of the Agreement do not provide the defendants with a right to scrutinize or second guess the legal strategies employed by Gray, or its counsel, in protecting its interests—they are liable to Gray for "all payments" made by Gray "in belief that . . . they were necessary or advisable to protect" Gray's rights or lessen their liability.[69]

Louisiana law defines "good faith" as "honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing." LA. REV.

---

[67] Opp. [Doc. 89], at 8.
[68] General Indemnity Agreement [Doc. 86-6], at 1.
[69] *Id.*

13

STAT. ANN. § 39:1553 (1980); *see also Fid. & Deposit Co. of Md. v. F.D. Shay Contractor, Inc., et al.*, No. 05-197, 2006 U.S. Dist. LEXIS 3047, at *15 (W.D. La. Jan. 18, 2006) (citation omitted). Here, the defendants have failed to make any showing as to Gray's alleged dishonesty that would be sufficient to preclude a grant of summary judgment in Gray's favor.

Lacking any actual evidence to support their claims, the defendants' argument essentially boils down to a request that the court find that hundreds of thousands of dollars in attorneys' fees is unreasonable as a matter of law. This, the court cannot do. The litigation Gray undertook in connection with the bonds issued to the defendants took the better part of a decade, required great time and skill on the part of Gray's attorneys, and involved fees that were the direct result of the defendants' failure to live up to the terms of the Agreement.

The Agreement binds the defendants "jointly and severally,"[70] which means that the three individual defendants—Joseph Terry, Aaron Terry, and Tammie Terry—bound themselves *in solido* with GTS and with one another. *See Daigle v. Chaisson*, 396 So. 2d 573, 575 (La. Ct. App. 1981) (citations omitted). "An obligation *in solido* is one where each of the several obligors is liable for the whole." *Kennedy-Fagan v. Estate of Graves*, 993 So. 2d 255, 265 (La. Ct. App. 2008) (citation omitted). Accordingly,

**IT IS ORDERED** that Gray's Motion for Summary Judgment [Doc. 86] be and hereby is **GRANTED** as to the individual defendants, Joseph Terry, Aaron D. Terry, and Tammie M. Terry.

**IT IS FURTHER ORDERED** that Joseph Terry, Aaron D. Terry, and Tammie M. Terry, be and hereby are ordered to indemnify Gray in the amount of $1,683,509.82.

---

[70] General Indemnity Agreement [Doc. 86-6], at 1.

**IT IS FURTHER ORDERED** that the right to seek additional costs and expenses incurred in the enforcement of the Agreement is reserved to Gray, subject to Gray's ongoing obligation of good faith.

As previously noted, however, the defendant, GTS, has filed for bankruptcy, and has notified the court of a stay currently in effect under 11 U.S.C. § 362.[71] As such,

**IT IS ORDERED** that all proceedings in the above captioned matter against GTS be and hereby are **STAYED** pursuant to 11 U.S.C. § 362.

Lake Charles, Louisiana, this 5 day of March, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

[71] *See* Suggestion of Bankruptcy [Doc. 88], at 1; Not. of Bankruptcy Case Filing [Doc. 88], at 3. See also 11 U.S.C. § 362, stating that the filing of bankruptcy operates as an automatic stay of any "judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ."